[No. D052584. Fourth Dist., Div. One. Jan. 22, 2009.]

COMMUNITY YOUTH ATHLETIC CENTER, Plaintiff and Appellant, v. CITY OF NATIONAL CITY et al., Defendants and Respondents.

418

COUNSEL

Pillsbury Winthrop Shaw Pittman, Richard M. Segal, C. J. Martin; Institute for Justice, William H. Mellor, Dana Berliner and Jeff Rowes for Plaintiff and Appellant.

David Blair-Loy; Richard A. Rothschild; and Mary A. Lehman for ACLU Foundation of San Diego & Imperial Counties and Western Center on Law & Poverty, Inc., as Amici Curiae on behalf of Plaintiff and Appellant.

Best, Best & Krieger, Bruce W. Beach and Shannon M. Erickson for Defendants and Respondents.

OPINION

**HUFFMAN, J.**—Plaintiff and appellant Community Youth Athletic Center, a nonprofit entity (plaintiff), filed this "reverse validation" action under Code of Civil Procedure[1] section 863 to challenge the validity of an ordinance that amends a 1995 redevelopment plan enacted by the City of National City and its community development commission (together, the City). (Health & Saf. Code, § 33000 et seq.; the Community Redevelopment Law.) The challenged City ordinance, No. 2007-2295 (the ordinance), extends the time period for treating approximately 700 parcels of real property, including that owned by plaintiff, as blighted and allowing eminent domain takings of them. Plaintiff's complaint alleges the procedures followed by the City in this respect are not supported by the law or the facts, and seeks declaratory relief, injunctive relief and damages, along with attorney fees and costs, under several statutory and constitutional theories. (42 U.S.C. § 1983; Cal. Const., art. I, § 7, subd. (a) (takings clause); Gov. Code, § 6258 (Public Records Act).)

Pursuant to the statutory scheme for validation and reverse validation proceedings (§ 860 et seq.; the validation law), plaintiff obtained a court order through noticed ex parte proceedings and then published the summons, which was directed toward the City and to "All Persons Interested in the Matter of the Amendment to National City's Redevelopment Plan as Adopted by [the ordinance]." Plaintiff encountered difficulties with the publication process in English and Spanish newspapers, when one of the newspapers unexpectedly changed its publication schedule, and ultimately, the summons that was published after some delay retained an incorrect date for responses by interested parties (i.e., the published summons contained the date for response

---

[1] All statutory references are to this code unless otherwise stated.

as originally anticipated, thus advancing the allowable response period following publication, from Monday, Nov. 19 to Friday, Nov. 16, 2007). (§§ 861, 861.1, 863.)

Based on this defect, the City sought judgment on the pleadings and demurred to the complaint, arguing that the court lacked jurisdiction to proceed, and therefore the ordinance should remain in effect. In opposition, plaintiff claimed there had been substantial compliance with the statutory procedures, or in the alternative, it had shown good cause for its noncompliance, because of clerical or attorney error, and republication should be allowed. (§ 863.) Plaintiff also argued its constitutional and statutory theories were independent of the reverse validation claims and could not properly be disposed of in this manner.

The trial court granted the motion for judgment on the pleadings, concluding that all the claims pled related to the validity of the ordinance, were therefore all subject to the service requirements of the validation law, and no good cause for relief from noncompliance had been shown. Plaintiff appeals, arguing the court erred as a matter of law and abused its discretion by failing to recognize that good cause had been shown for relief, or in the alternative, that substantial compliance with statutory requirements of the validation law had been achieved. Plaintiff contends it has a right to pursue all its theories, including its constitutional theories and the cause of action under the Public Records Act, exclusive of the validation law. (In a separate petition for writ of mandate, *Community Youth Athletic Center v. Superior Court* (D052630, app. pending), plaintiff seeks to revive the Public Records Act claim (Gov. Code, § 6250 et seq.), and it is not now before us.)

The standards for evaluating compliance with the publication requirements of the validation law include statutory interpretation rules and discretionary calls, as recognized in *County of Riverside v. Superior Court* (1997) 54 Cal.App.4th 443, 450 [62 Cal.Rptr.2d 747] (*Riverside*). In that case, this court declined to reach the issue of whether substantial compliance or strict compliance standards for publication governed. Likewise, in *Katz v. Campbell Union High School Dist.* (2006) 144 Cal.App.4th 1024, 1034–1035 [50 Cal.Rptr.3d 839] (*Katz*), the court found it unnecessary to resolve that fine point of law. As we will explain, we take the same approach, declining to choose between strict and substantial compliance standards, since we are unable to find there was substantial compliance with the validation law sufficient to confer jurisdiction on the court to resolve this in rem proceeding.

Nevertheless, the governing standards require us to resolve this matter in light of the good cause provision of section 863. (*City of Ontario v. Superior Court* (1970) 2 Cal.3d 335, 345–348 [85 Cal.Rptr. 149, 466 P.2d 693] (*Ontario*).) On the undisputed facts, it is evident that the trial court used an incorrect legal standard and abused its discretion in failing to find there was good cause for relief from noncompliance with the publication requirements, and the court should have allowed leave to republish the summons. We reverse the judgment on the pleadings with directions accordingly.

## BACKGROUND FACTS AND PROCEDURE

### A. Ordinance and Complaint

In 1995, the city and its community development commission reenacted a redevelopment plan that authorized the use of eminent domain in the area where plaintiff's property is located, based on designations of blight. Plaintiff operates a boxing gym and athletic facility that serves at-risk youth as a community center. The City amended the plan in 2007 by holding public hearings and preparing reports under the provisions of the Community Redevelopment Law. (Health & Saf. Code, § 33000 et seq.) The City has preliminarily approved the construction of condominium developments in the blighted area, and the ordinance extended the time for eminent domain proceedings to be conducted there.

In September 2007, plaintiff brought this action seeking a judicial declaration that the ordinance was invalid, on a number of specific grounds, for noncompliance with the procedures of the Community Redevelopment Law. In particular, plaintiff's first, fifth, and sixth causes of action allege that the City has failed to release its reports on the matter in a timely fashion, thus preventing the public from preparing any effective objections to the proposed redevelopment plan. The City has also sought to proceed with its plans without establishing and providing to the public the required substantial evidence of existing blight and alleviation of blight through the proposed redevelopment.

In its causes of action alleging constitutional violations, plaintiff contends it is being deprived of its property without due process of law, and that the eminent domain law is being used for constitutionally illegitimate purposes, such as economic development. Plaintiff contends these constitutional claims are independent of the statutory causes of action. The prayer requests a declaration that the City violated plaintiff's due process rights to a meaningful opportunity to be heard, an invalidation of the ordinance, and other relief.

## B. *Publication and Motion for Judgment on the Pleadings*

After filing the complaint, plaintiff sought a court order for service by publication on the City entities as defendants, and "All Persons Interested in the Matter of the Amendment of [the ordinance] . . . ." Plaintiff notified the City of ex parte proceedings to obtain the publication order, and obtained an order signed by the presiding judge, when the trial judge was absent. Plaintiff then obtained a revised order after further delay was caused by the newspaper's change in publication schedule, and by the fires in San Diego in the fall of 2007, which closed the courthouses for a week in October.[2]

In its ruling on the motion, the trial court outlined the sequence of events about the difficulties that followed: "[Plaintiff's attorney]'s declaration relates how after the order for publication was signed he learned the chosen publication dates would not work because the newspapers no longer published summonses on Tuesdays. He spoke with opposing counsel about the need for a revised order with new publication dates and opposing counsel agreed to the proposed changes. Although [plaintiff's attorney] states he and [city counsel] specifically discussed the November 16 date and agreed that the date did not need to change, [city counsel] has no recollection of discussing or consenting to the court acquiring jurisdiction on November 16. [Plaintiff's attorney] states due to the confusion surrounding the last minute changes to the publication order he 'failed to recognize that the response date listed in the summonses was in error' and 'unwittingly failed to revise the response date in the revised order and in the summonses.'"

Thus, it is undisputed here that under the statutory procedures for publishing the summons, interested persons were told to file a responsive pleading by November 16, 2007 (a Friday), when the summons should have said November 19, 2007 (the following Monday). (Gov. Code, § 6063 [requiring 21 days for completion of publication, which occurred Nov. 7, 2007]; Code Civ. Proc., §§ 12a & 861.1 [requiring 10 further days for any answer to be filed, and extension for a weekend].)[3]

In response to the filing and service of the complaint, the City moved for judgment on the pleadings, contending that the court lacked jurisdiction to entertain the action based on inadequate service by publication. Demurrers were brought on the same grounds.

---

[2] In addition to the published version of the summons addressed to all unknown defendants, another version of the summons was filed, additionally naming the City entities as defendants. The City filed its general denial and apparently does not dispute the adequacy of the service upon itself, only upon the unknown defendants.

[3] In addition to plaintiff, other property owners sought to intervene in the action, but those requests were denied because the court decided intervention was not appropriate. That order is not challenged in this appeal.

## C. Ruling; Application; Related Petition

In its ruling, the court first summarized the statutory requirements under the validation law. " 'If the interested person bringing such action fails to complete the publication and such other notice as may be prescribed by the court in accordance with Section 861 and to file proof thereof in the action within 60 days from the filing of his complaint, the action shall be forthwith dismissed on the motion of the public agency unless good cause for such failure is shown by the interested person.' [§ 863.] 'Jurisdiction shall be complete after the date specified in the summons. Any party interested may, not later than the date specified in the summons, appear and contest the legality or validity of the matter sought to be determined.' [§ 863.] 'When jurisdiction is obtained by a prescribed form of constructive notice the statutory conditions upon which the service depends must be strictly construed. Unless the statute has been complied with there is no power to render a judgment.' (*Pinon v. Pollard* (1945) 69 Cal.App.2d 129, 133 [158 P.2d 254].)"

The court then noted that it is undisputed that the summons here required interested persons to file a responsive pleading by November 16, 2007 (a Friday), when it should have said November 19, 2007 (the following Monday). The court concluded, "Plaintiff's explanation does not constitute good cause for failing to include the correct date in the summonses. 'The good cause which must be shown in such a case as this "may be equated to good reason for a party's failure to perform that specific requirement [of the *statute*] from which he seeks to be excused." [Citations.]' " The court disagreed with plaintiff's arguments under *Arnold v. Newhall County Water Dist.* (1970) 11 Cal.App.3d 794 [96 Cal.Rptr. 894] (*Arnold*) that it was entitled to a finding of good cause, because the court said publication of the summons was incorrect based on the inexcusable fault of the attorney.

The court further rejected plaintiff's contentions that even if the reverse validation claim fails, its constitutional and public record claims should remain viable. The court concluded that the allegations of the complaint showed otherwise, because "all the claims relate to the validity of the ordinance, [and] they are subject to Cal. Code of Civil Proc. § 863." Judgment on the pleadings was granted.

Plaintiff appeals the ruling with respect to the first six causes of action. It has also separately filed its petition for writ of mandate to challenge the seventh cause of action (Public Records Act), which we originally ordered to be considered with this appeal. Subsequently, that order was vacated and this opinion will address only the ruling regarding the first six causes of action.

Pending appeal, we granted an application to file an amicus curiae brief on behalf of plaintiff, from the ACLU of San Diego and Imperial Counties and the Western Center on Law and Poverty. The City has answered the amicus curiae briefing.

## DISCUSSION

On appeal, plaintiff contends the trial court erred as a matter of law in (1) failing to apply the doctrine of substantial compliance to the contents of its timely published notice; (2) failing to apply a correct standard for "good cause" for publication error under section 863; (3) granting judgment on the pleadings on the federal and state constitutional claims.[4] (Plaintiff's additional contention that the court erred in granting judgment on the pleadings on its Public Records Act claim, seventh cause of action, is being addressed separately in the writ proceeding (*Community Youth Athletic Center v. Superior Court, supra,* D052630).)

In response, the City argues that compliance with the validation law is to be strictly construed and no substantial compliance rule may apply. Additionally, it contends no relief from default under section 863, as it may incorporate section 473 standards, could be allowed, because this was not an excusable mistake of law, and plaintiff's remaining claims are either premature or were part of the validation action.

To address these issues and explain our analytical approach, we first set out the applicable standards and some preliminary procedural observations.

### I

### *STANDARDS OF REVIEW AND PRELIMINARY PROCEDURAL ISSUES*

This matter comes to us as a judgment on the pleadings on the issue of whether the superior court lacked jurisdiction to proceed based on defective

---

[4] In full, section 863 provides: "If no proceedings have been brought by the public agency pursuant to this chapter, any interested person may bring an action within the time and in the court specified by Section 860 to determine the validity of such matter. The public agency shall be a defendant and shall be served with the summons and complaint in the action in the manner provided by law for the service of a summons in a civil action. In any such action the summons shall be in the form prescribed in Section 861.1 except that in addition to being directed to 'all persons interested in the matter of (specifying the matter),' it shall also be directed to the public agency. If the interested person bringing such action fails to complete the publication and such other notice as may be prescribed by the court in accordance with Section 861 and to file proof thereof in the action within 60 days from the filing of his complaint, *the action shall be forthwith dismissed on the motion of the public agency unless good cause for such failure is shown by the interested person.*" (Italics added.)

service by publication, and this court order effectively accomplished a dismissal of the action. Issues concerning the application of the validation law are more commonly presented in the contexts of motions to quash service of summons or to dismiss the action for lack of a good cause showing pursuant to section 863. (*Riverside, supra,* 54 Cal.App.4th 443, 446; *Katz, supra,* 144 Cal.App.4th 1024, 1027.) In contrast, a judgment on the pleadings normally addresses only those matters that are evident on the face of the pleadings. This record contains declarations from opposing counsel and staff, giving their individual accounts of the negotiation, processing, and understandings about the publication orders, although the differences in those accounts are minimal and relate only to the respective counsel's understandings about the content of the summons itself, including the dates in it.

For purposes of our review of the trial court's application of the validation law, threshold jurisdictional issues must be resolved, and such declarations by counsel are not essential to the resolution of the substantial compliance issues. However, when the good cause exception of section 863 comes into play, the court has to utilize its discretion to analyze the circumstances before it. Accordingly, we will first treat the judgment on review as raising questions of law concerning the interpretation of statutory provisions, and then, if necessary, address the issue of whether the trial court abused its discretion in assessing the allegations before it. We will set out those standards of review separately in discussing the substantial compliance claims and the good cause argument.

■ We also note another unusual procedural point about this case: section 861 does not explicitly require that a court order for publication be obtained under the validation law, but the statutory scheme anticipates that the court may participate in creating a sufficient notice scheme. Section 861 allows the court to extend the scope of publication of summons, and to make a determination about whether, prior to completion of such publication, the agency must, "*to the extent which the court finds reasonably practicable, give notice of the pendency of the proceeding by mail or other means ordered by the court.*" (Italics added; see *Arnold, supra,* 11 Cal.App.3d at pp. 800–801 [assuming the trial court will have a role in designating what service by publication will be adequate in any given action]; *Millbrae School Dist. v. Superior Court* (1989) 209 Cal.App.3d 1494, 1497 [261 Cal.Rptr. 409].) In this case, the City was given notice of the ex parte procedures for obtaining this order, and counsel for the City was made aware of the subsequent problems in obtaining the two orders with attached summons, and not all of those problems were attributable to the fault of plaintiff's counsel (e.g., delay due to absence of a judge and closing of the courts during the firestorm). We shall discuss those factors more fully with respect to the problems presented regarding any good cause for relief under these facts. With these background considerations in mind, we turn to the substantial compliance issue.

## II

### *APPLICABLE STANDARDS IN REVERSE VALIDATION ACTION: SUBSTANTIAL COMPLIANCE*

"It is well settled that the interpretation and application of a statutory scheme to an undisputed set of facts is a question of law [citation] which is subject to de novo review on appeal. [Citation.]" (*Rudd v. California Casualty Gen. Ins. Co.* (1990) 219 Cal.App.3d 948, 951–952 [268 Cal.Rptr. 624].) On review, an appellate court is not bound by the trial court's statutory interpretation. (*Id.* at p. 952; *California Teachers Assn. v. San Diego Community College Dist.* (1981) 28 Cal.3d 692, 699 [170 Cal.Rptr. 817, 621 P.2d 856].) The undisputed facts are to be measured against the standards set by statute for the service and evaluation of such validation proceedings. (*Katz, supra,* 144 Cal.App.4th 1024, 1031.)

■ We first seek to clarify the nature of the jurisdictional problem presented. As outlined by this court in *McLeod v. Vista Unified School Dist.* (2008) 158 Cal.App.4th 1156, 1166–1167 [71 Cal.Rptr.3d 109] (*McLeod*), validation actions brought under section 860 et seq. are based upon the important public policy of securing a speedy determination of the validity of certain actions taken by a public agency. The statutory scheme expressly states that these are in rem proceedings with respect to the notice requirements to all those persons potentially interested in the issues of public interest presented (here, redevelopment and eminent domain). "A validation action is 'in the nature of a proceeding in rem.' (§ 860.)" (*Katz, supra,* 144 Cal.App.4th 1024, 1028.) "Strictly speaking, an action 'in rem' is an action ' "against a thing." ' [Citation.] Classic in rem jurisdiction is acquired by seizing the thing (usually property) and commencing proceedings for satisfaction of a claim against the property by giving 'general notice to all the world' of the seizure and the pendency of the action. [Citation.] Notice to all the world 'suffices to make the claimants to the property parties to the action' and the resulting judgment conclusive as against all the world. [Citation.]" (*Id.* at p. 1031.)[5]

■ Although the court in *Riverside, supra,* 54 Cal.App.4th 443, 446, footnote 5, relied on *Arnold, supra,* 11 Cal.App.3d 794, to state that "a (reverse) validation action is *quasi in rem* and jurisdiction over the matter depends on proper service" (italics added), the more common approach is to

---

[5] Plaintiff has supplied legislative history materials concerning the 1961 enactment of the validation law and the 1998 amendments to section 861.1, regarding service of summons. Plaintiff also argues that 2006 amendments to the Community Redevelopment Law emphasized that the Legislature intended that the interested public not be foreclosed from commenting upon redevelopment issues that affect it. (Stats. 2006, ch. 595, § 1, subd. (f).)

treat it as an in rem matter, without any "quasi-" designation. The consequence of this is, as explained in *Katz, supra*, 144 Cal.App.4th 1024, 1031–1032, that proper notice is critical to establishing jurisdiction to resolve the public interest question presented: "In a validation action the thing that is the subject of the action is the matter to be validated, i.e., the ordinance, resolution, or other action taken by the public agency. The only way for the court to acquire jurisdiction over the matter is to ensure that notice is given to all interested persons so that the resulting judgment can be conclusive as against them. [Citation.] Notice is provided by publishing the summons in a particular form, within a specified timeframe, and specifying a date for response. Jurisdiction is not 'complete' until 'after the date specified in the summons.' (§ 862.) Failure to publish a summons in accordance with the statutory requirements deprives the court of jurisdiction over 'all interested parties' (§ 861), which deprives the court of the power to rule upon the matter. The Legislature has given the trial court power to permit a plaintiff to cure the defect if the plaintiff can demonstrate good cause. (§ 863.) But the court cannot overlook a defective summons. Unless the plaintiff has published a summons in compliance with the statutory requirements, the court has no jurisdiction to rule upon the matter that is the subject of the action. [Citation.]"

 If such service is inadequate, a matter of great public interest may evade review. " 'Under the statutory scheme, "an agency may indirectly but effectively 'validate' its action by doing nothing to validate it; unless an 'interested person' brings an action of his own under section 863 within the 60-day period, the agency's action will become immune from attack whether it is legally valid or not." ' [Citation.] '[A]s to matters which have been or which could have been adjudicated in a validation action, such matters . . . must be raised within the statutory limitations period in section 860 et seq. or they are waived.' [Citations.]" (*McLeod, supra*, 158 Cal.App.4th 1156, 1166, italics omitted.)

Section 861.1 states in full: "The summons shall be directed to 'all persons interested in the matter of (specifying the matter),' and shall contain a notice to all persons interested in the matter that they may contest the legality or validity of the matter by appearing and filing a written answer to the complaint not later than the date specified in the summons, *which date shall be 10 or more days after the completion of publication of the summons*. The summons shall provide a detailed summary of the matter the public agency or other person seeks to validate. The summons shall also state that persons who contest the legality or validity of the matter will not be subject to punitive

action, such as wage garnishment or seizure of their real or personal property. Except as otherwise specified in this section the summons shall be in the form prescribed in Section 412.20." (Italics added.)

■ As explained in *Riverside, supra*, 54 Cal.App.4th at page 450: "It is often stated that the rules governing service of process are to be liberally construed, and that 'substantial compliance' with the statutory mandates is sufficient to confer jurisdiction. [Citations.] However, the traditional rule is that the requirements for service of summons by publication must be strictly complied with. [Citations.] Although in [a cited case] the Supreme Court cited various commentators and State Bar reports whose recommendations of 'liberal construction' preceded the reworking of the service statutes in 1970, subsequent cases have recognized that there remain situations in which 'substantial compliance' is simply inadequate. . . . [¶] If there is any situation in which strict compliance can reasonably be required, it is that of service by publication. It is true, however, that the cases are not consistent in their description of the appropriate standard even in this context. (See cases collected and cited in *Arnold*[, *supra*,] at pp. 800–801.)" (Italics omitted.)

■ Plaintiff is arguing that it substantially complied with all applicable requirements, and no further determinations regarding good cause need be reached. Plaintiff contends that no strict compliance rule is essential to protect the purposes of the validation law. The amicus curiae brief on behalf of plaintiff mainly focuses upon support for a substantial compliance rule, as promoting potential access to justice. However, as already noted, several recent cases have declined to choose between substantial and strict compliance rules in this context, where there was no substantial compliance in any case on the facts before them. (*Riverside, supra*, 54 Cal.App.4th 443, 450 ["we need not attempt to make a definitive resolution in this case. In the unique circumstances present here we find that plaintiffs failed to comply even substantially with the statute." (italics omitted)]; *Katz, supra*, 144 Cal.App.4th 1024 at p. 1035.)

We will likewise decline to adopt a strict compliance or substantial compliance rule, because we cannot find any substantial compliance under these circumstances. The effect of the missing three days in the summons as ultimately published, giving all interested persons an opportunity to answer or to present an opinion in favor of the complaint, was to cut off three days from the allowable response period for anyone who read the publication, and giving such notice was the only purpose of the publication. Under the bulk of the authority interpreting service requirements, and in light of the statutory purposes of the validation law, this defect cannot be considered to be minor or inconsequential, but instead is jurisdictional. There was no substantial compliance here, and we turn to the good cause showing made by plaintiff.

## III

## *GOOD CAUSE ANALYSIS*

The standards for evaluating whether relief should be justified from any insufficiency of service by publication in a validation case, based on mistakes of law, were set forth by the Supreme Court in *Ontario, supra,* 2 Cal.3d 335, 347: " '[I]n matters of this sort the proper decision of the case rests almost entirely in the discretion of the court below, and appellate tribunals will rarely interfere, and never unless it clearly appears that there has been a plain abuse of discretion.' [Citations.]" If a clear abuse of the trial court's discretion is evident, a trial court's ruling on the sufficiency of publication of a reverse validation action may be overturned. (*Ibid.*) "Whether plaintiff demonstrated good cause for failing to comply with the summons publication require-ments . . . is a question that is committed to the sound discretion of the trial court." (*Katz, supra,* 144 Cal.App.4th 1024, 1031.) The trial court has the discretion to allow leave to modify and republish the summons, on the basis of an excusable mistake of law. (§ 863; *Ontario, supra,* 2 Cal.3d 335, 346–348; *Community Redevelopment Agency v. Superior Court* (1967) 248 Cal.App.2d 164, 174 [56 Cal.Rptr. 201].)

█ As set out in *Ontario, supra,* 2 Cal.3d 335, the test governing a claim of good cause under section 863 " ' "may be equated to good reason for a party's failure to perform that specific requirement [of the statute] from which he seeks to be excused." [Citation.] The rule is that "a mistake as to the law does not require relief from default as a matter of law. [Citation.] The issue of which mistakes of law constitute excusable neglect presents a fact question; the determining factors are the reasonableness of the misconception and the justifiability of lack of determination of the correct law. [Citation.]" ' " (2 Cal.3d at pp. 345–346.) "Counsel are not expected to be omniscient, as the Legislature plainly recognized by writing the 'good cause' exception into section 863." (*Id.* at p. 346.)

The City mainly contends here that any mistake here was not a mistake of law, but was an inexcusable mistake by counsel or of fact, and that *Ontario, supra,* 2 Cal.3d 335, does not clearly authorize relief in this particular situation. But neither does *Ontario* expressly forbid such relief, since those specific circumstances were not before the Supreme Court there nor necessary for resolution of the case. Other Supreme Court authority has allowed relief from default under section 473 for attorney error. The test in section 473 cases for determining whether attorney error in procedural matters is excus-able looks to two factors: the nature of the mistake or neglect, and whether counsel was otherwise diligent in pursuing the claim. (*Bettencourt v. Los Rios Community College Dist.* (1986) 42 Cal.3d 270, 276 [228 Cal.Rptr. 190,

721 P.2d 71] (*Bettencourt*); see also *Zamora v. Clayborn Contracting Group, Inc.* (2002) 28 Cal.4th 249, 258–259 [121 Cal.Rptr.2d 187, 47 P.3d 1056] [relief proper for excusable attorney error to avoid prejudice to client].)

When the trial court found a lack of good cause to allow republication and dismissed the case, its decision was apparently made under an incorrect legal standard, which did not take into account the above factors set forth in *Bettencourt, supra*, 42 Cal.3d 270. The undisputed facts in the current record present a scenario of an understandable procedural mistake, regarding the incorrectness of an attached document, when the focus of counsel was instead upon obtaining the order authorizing the publication of the attached summons, and when unforeseen administrative problems arose such as the absence of the trial judge and the closing of the courthouse during a countywide firestorm, and the unilateral schedule change of the newspaper. Counsel for plaintiff was otherwise diligent in pursuing the claim, and although the missing three days for the response period in the summons is critically important for jurisdictional purposes, it is not the kind of error that is inexcusable neglect that would justify a denial of a good cause finding under section 863. Instead, plaintiff adequately set forth reasons why it inadvertently failed to comply with the statute, within the meaning of the good cause definition in this context. (*Katz, supra*, 144 Cal.App.4th at p. 1036; *Arnold, supra*, 11 Cal.App.3d at pp. 802–803.) Specifically, plaintiff's attorney was seeking to comply with the applicable notice requirements, and the error in the publication date was directly attributable to the administrative difficulties he encountered in obtaining an appropriate order for publication, to afford such notice. (*Ontario, supra*, 2 Cal.3d 335, 345–346.)

■ Moreover, section 866 provides: "The court hearing the action shall disregard any error, irregularity, or omission which does not affect the substantial rights of the parties." In *Katz, supra*, 144 Cal.App.4th 1024, the court expressed the opinion that the language of this section can only apply to the substance of the action itself, not to an evaluation of the sufficiency of the summons. (*Id.* at p. 1034, fn. 4.) We respectfully disagree, because that interpretation inappropriately downgrades the importance of the statutory language of section 866 when the statutory scheme is read as a whole. The policy of section 866 should encompass not only the merits of the complaint but also the procedures for obtaining jurisdiction to resolve the merits. We accordingly find in section 866 additional support for a broader interpretation of the good cause for relief provision of section 863, than the trial court or the City would allow.

Along these lines, it is interesting at least that the trial judge commented at oral argument that he personally thought the area was blighted and that a condemnation award down the line should be enough of a remedy for

plaintiff. Such considerations do not enter into this good cause finding, which should be confined to the sufficiency of the notice, not the merits of the case.

We therefore conclude the trial court's denial of leave to republish the summons was an abuse of discretion, in light of the showing made by plaintiff of the otherwise diligent efforts it made to notify the City and the interested public of its objections to the ordinance. The unfortunate set of circumstances is not disputed: the delays in obtaining two court orders, and the intervening unexpected change of publication dates by the newspaper, which effectively rendered the summons inaccurate as attached to the order when ultimately obtained. In light of the evident purposes of the validation law, to allow adequate notice so that the matter may be decided on the merits and not foreclosed from review, the trial court erred and abused its discretion in determining that no good cause was shown for the failure to timely complete service. (§ 863; *McLeod, supra*, 158 Cal.App.4th at pp. 1166–1167.) The judgment on the pleadings, effectively serving as an order for dismissal, was inappropriately granted when this record is viewed as a whole.

The issue remains of the proper remedy regarding the denial of leave to republish. (See § 863; *Ontario, supra*, 2 Cal.3d 335, 338.) Since we have found that the discretionary decision by the trial court, finding a lack of good cause, was made under the wrong legal standard, and since the facts are undisputed on any material point, we think the appropriate relief is to direct the trial court to exercise its discretion in the only way justified by the record, to allow republication. No further showing by plaintiff of good cause is necessary.

IV

*REMAINING CLAIMS*

Finally, since the matter must be remanded with directions to allow republication, we need not reach the remaining issues argued, on whether the validation law is necessarily dispositive of all the different theories alleged in the complaint, including the constitutional theories and the public records requests. We have separately set for decision the writ of mandate challenging the dismissal of the public records cause of action, and will address the relationship of this ruling and that petition at that time. At this time, however, the trial court must allow leave to republish the summons as to the entire complaint, since the judgment on the pleadings was erroneously granted as a matter of law.

## DISPOSITION

The judgment is reversed with directions to the trial court to allow leave to republish the summons as to the entire complaint. Each party shall bear its own costs on appeal.

McConnell, P. J., and McIntyre, J., concurred.

Respondents' petition for review by the Supreme Court was denied April 29, 2009, S170709.